## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC | |
| Plaintiff, | Civil Action No. 4:24-cv-625 |
| v. | |
| T-MOBILE USA, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Morris Routing Technologies, LLC ("MRT" or "Plaintiff"), for its Complaint against Defendant T-Mobile USA, Inc.[1] ("T-Mobile" or "Defendant") alleges the following:

### NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

### THE PARTIES

2.     Plaintiff MRT is a limited liability company organized under the laws of the State of Texas with a place of business at 1312 14TH St. Suite 204, Plano TX 75074.

3.     Defendant T-Mobile USA, Inc. is a corporation organized and existing under the laws of Delaware.  Since November 22, 1999, T-Mobile has been registered to do business in

---

[1] Defendant T-Mobile USA, Inc. is a wholly-owned subsidiary of T-Mobile US, Inc.  Plaintiff did not include T-Mobile US, Inc. as a defendant in this lawsuit because T-Mobile has in other recent cases represented that "T-Mobile US, Inc. is a holding company that does not provide any products, services, or networks."  *Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.,* No. 2:23-cv-00096, Dkt. 14 ¶ 3 n.3 (E.D. Tex. May 26, 2023); *see also id.,* Dkt. 13 (E.D. Tex. May 26, 2023) (stipulation of dismissal as to T-Mobile US, Inc.).  Plaintiff reserves all rights to amend and add T-Mobile US, Inc. to this matter.

Texas under Texas SOS file number 0012958406.  T-Mobile may be served through its registered agent for service, The Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.      Upon information and belief, T-Mobile sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      Venue is proper in this judicial district under 28 U.S.C. §1400(b).

8.      Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

9.      Furthermore, this Court has general and specific personal jurisdiction over the Defendant under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.  T-Mobile has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district.  Venue is also proper in this district because T-Mobile has a regular and established place of business and has committed acts of infringement in this district.

10.     For example, T-Mobile maintains brick and mortar retail stores in this District located, among other places, in Marshall (*e.g.*, 1806 E End Blvd N, Ste 100, Marshall, TX 75670), Longview (*e.g.*, 2108 Gilmer Rd, Longview, TX 75604; and 116 E Loop 281, Ste 101, Longview, TX 75605), Tyler (*e.g.*, 8942 S Broadway Ave, Ste 104, Tyler, TX 75703; 3320 Troup Hwy, Tyler, TX 75701; 3840 State Hwy 64 W, Tyler, TX 75704; and 1400 W Southwest Loop 323, Ste 70, Tyler, TX 75701), Beaumont (*e.g.*, 5899 Eastex Freeway, Suite 100, Beaumont, TX 77706; 3870 College St, Ste 100, Beaumont, TX 77701; and 5885 Eastex Fwy, Beaumont, TX 77706), Lufkin (*e.g.*, 2906 Brentwood Dr, Ste 200, Lufkin, TX 75901), Sherman (*e.g.*, 405 N US Hwy 75, Sherman, TX 75090), Texarkana (*e.g.*, 4210 Saint Michael Dr, Texarkana, TX 75503; 3741 Mall Dr, Texarkana, TX 75501; and 2004 St Michael Dr, Texarkana, TX 75503), Plano (*e.g.*, 2800 N Central Expy, Plano, TX 75074; 1110 Parker Road East, Suite C, Plano, TX 75074; 1701 Dallas Pkwy, Plano, TX 75093; 7000 Independence Parkway, Suite 168, Plano, TX 75025; 1913 Preston Rd, Ste 100, Plano, TX 75093; and 5800 Legacy Dr, Suite C-9, Plano, TX 75024), McKinney (*e.g.*, 1751 N Central Expy, Mckinney, TX 75070; 3650 W University Dr, Mckinney, TX 75071; 2811 Craig Dr, Ste 104, Mckinney, TX 75070; 3009 S Custer Road #300, Mckinney, TX 75070; 1521 W University Dr 130, Mckinney, TX 75069; and 8910 State Hwy 121, Suite 200, Mckinney, TX 75070), and Frisco (*e.g.*, 3333 Preston Rd, Frisco, TX 75034; 5722 Eldorado Pkwy, Suite 120, Frisco, TX 75033; 2155 University Dr, Ste 150, Frisco, TX 75033; 7135 Preston Rd, Ste 200, Frisco, TX 75034; 2601 Preston Rd, Space #2200, Frisco, TX 75034; and 252 W Stonebrook Pkwy, Suite 570, Frisco, TX 75034) .[2]

---

[2] *See*, *e.g.*, https://www.t-mobile.com/stores/locator.

11.     T-Mobile also operates numerous brick and mortar retail stores in the Eastern District of Texas.  These retail stores are physically located within this District, are regular and established places of business of T-Mobile, and are used by T-Mobile to actively market and sell services for the T-Mobile Wireless Networks that infringe the Patents-In-Suit.  By way of example and without limitation, T-Mobile's website provides an "T-Mobile Locator" feature that shows the locations of such T-Mobile retail stores within this District.[3]



12.     T-Mobile also provides infringing products and services within the Eastern District of Texas, including those related to its wireless services and other network services, and also advertises their availability within this District.  By way of example and without limitation, T-Mobile's website provides a "4G & 5G Coverage map" that advertises T-Mobile's current 4G and 5G wireless network coverage in and around Marshall, Texas.[4]

---

[3] *See, e.g.,* https://www.t-mobile.com/stores/locator.
[4] *See, e.g.,* https://www.t-mobile.com/coverage/coverage-map?icid=MGPO_TMO_U_NETWORK_F9F56EBA73E7F9E236688.



13.     T-Mobile also maintains a regular and established place of business in this District, including but not limited to multiple "T-Mobile Corporate Offices" located in Frisco, Texas, including at 7668 Warren Pkwy, Frisco, TX 75034, and at 3560 Dallas Pkwy, Frisco, TX 75034.[5]



14.     T-Mobile has numerous employees who work in Texas, including within the Eastern District of Texas.  In addition to its many retail stores in Texas and in this District, T-

---

[5] *See* https://www.google.com/maps/search/t-mobile+corporate+office,+in+frisco,+tx/.

Mobile, including at T-Mobile's many retail stores throughout the Eastern District of Texas and corporate offices in Frisco, Texas (as discussed above).

15.     T-Mobile has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits specifically related to T-Mobile's infringement of the Patents-In-Suit.

16.     In other recent actions, T-Mobile has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against T-Mobile. *See, e.g., Wireless Alliance, LLC v. T-Mobile US, Inc. and T-Mobile USA, Inc.,* No. 2:23-cv-00096, Dkt. 14 at ¶ 3, n.3 (E.D. Tex. May 26, 2023) ("T-Mobile does not contest . . . . venue is proper in this District . . . ."); *Solstice Wireless LLC v. T-Mobile USA, Inc., No. 4:22-cv-00723,* Dkt. 8 at ¶ 25 (E.D. Tex. Nov. 7, 2022) ("Defendants do not contest that venue is proper as to T-Mobile USA."); *Innovative Sonic Ltd., et. al. v. T-Mobile USA, Inc.,* No. 2:23-cv-00490, Dkt. 31 at Ᵽ  9 (E.D. Tex. Jan. 18, 2024) ("T-Mobile . . . . does not contest that venue is proper in this district.").

17.     Further, this Court has jurisdiction and proper authority to exercise venue over T-Mobile because T-Mobile also conducts substantial business in the State of Texas by procuring network equipment from Nokia and Ericsson, which T-Mobile has deployed in its infringing networks.[6]

---

[6] *See e.g.*, https://www.lightreading.com/5g/t-mobile-us-signs-5g-deals-with-ericsson-and-nokia; https://www.sdxcentral.com/articles/interview/t-mobile-us-open-to-open-ran/2023/03/; https://www.t-mobile.com/news/business/t-mobile-and-nokia-collaborate-on-building-flexible-and-scalable-5g-networks; https://www.nokia.com/about-us/news/releases/2024/01/23/t-mobile-selects-nokia-to-improve-scalability-and-efficiency-for-5g-high-speed-internet-service/; https://documentation.nokia.com/sr/24-3/7750-sr/books/common/dita_standards_2.html.

18.     T-Mobile's infringement has thus caused substantial injury to MRT, including in this judicial district.

## BACKGROUND

### The Inventions of the Patents-in-Suit

19.     Mr. Robert Paul Morris is the inventor of U.S. Patent Nos. 10,212,076 ("the '076 patent"; Exhibit A), 10,374,938 ("the '938 patent"; Exhibit B), 10,397,100 ("the '100 patent"; Exhibit C), 10,404,583 ("the '583 patent"; Exhibit D), 10,587,505 ("the '505 patent"; Exhibit E), 10,785,143 ("the '143 patent"; Exhibit F), 10,708,168 ("the '168 patent"; Exhibit G), 11,012,344 ("the '344 patent"; Exhibit H), and 10,904,144 ("the '144 patent"; Exhibit I) (collectively, the "Patents-in-Suit").  True and correct copies of the Patents-in-Suit are attached as Exhibits A-I.

20.     The Patents-in-Suit resulted from the pioneering efforts of Mr. Morris (hereinafter "the Inventor") in the area of segment-based routing ("SR").  These efforts resulted in the development of methods and apparatuses for improving the routing, provisioning and transport of data packets across networks in the 2012 timeframe using SR over Multiprotocol Label Switching ("MPLS") and IPv6 data planes (*See, e.g.,* '938 patent, col. 20:42-67), which are now referred to as "SR-MPLS" and "SRv6" respectively.

21.     At the time of these pioneering efforts, the most widely implemented technology used to address network traffic engineering was IP-based forwarding using a distributed control plane as well as constrained shortest-path forwarding.  In traditional IP/MPLS networks, routing decisions are made based on destination IP addresses, and packet forwarding decisions are determined hop-by-hop based on routing tables.

22.     MPLS introduced the concept of label switching, where packets are assigned labels at ingress routers and forwarded based on these labels rather than IP addresses, which can improve forwarding efficiency and allow for traffic engineering.  However, explicit state

information had to be maintained at all hops along an MPLS path, leading to scalability problems in the control plane and the data plane.  Additionally, per-connection traffic steering did not take advantage of load balancing offered by equal cost multipath routing typically used in IP networks.

23.     The Inventor conceived of the inventions claimed in the Patents-in-Suit as a way to improve addressing.  (*See, e.g.,* '938 patent, col. 2:37-39.)   Prior to the Inventor's efforts, Internet protocol dealt primarily with addresses and left mapping from names to addresses and mapping from local net addresses to routes to other protocol layers.  The claimed inventions of the Patents-in-Suit establish new relationships between and among names, addresses and routes to improve network operations.

24.     The claimed inventions of the Patents-in-Suit allow the source to choose a path and encode it in the packet header as sequence of identifiers that identify segments.  (*See, e.g.*, '938 patent, col. 19:18-21:7; col. 21:33-23:36; col. 33:41-34:21; Figs. 2, 9-11, 13.)  Using the claimed inventions of the Patents-in-Suit, networks no longer need to maintain a per-application and per-flow state and need only obey the forwarding information provided in the packet.  This results in a dramatic reduction in the per-flow state that needs to be maintained in network nodes supporting traffic engineered paths.  For example, instead of relying on a complex network of label-switched paths (LSPs) established by control protocols like LDP (Label Distribution Protocol) or RSVP-TE (Resource Reservation Protocol - Traffic Engineering), the inventions claimed in the Patents-in-Suit use source routing where a packet's path through the network is identified in the packet.  (*See, e.g.,* '938 patent, col. 25:23-29:21; col. 31:14-24; col. 39:1-11; col. 42:8-29.)

25.     The Inventor conceived of different ways to implement segment-based routing, including with MPLS-based and IPv6-based networks.  For example, with the claimed inventions of the Patents-in-Suit, a segment identifier can be embodied as an MPLS label and a plurality of segment identifiers can be included in a sequence thereof.  The first segment identifier of the sequence is processed and upon completion, such segment identifier is removed from the sequence.  By removing reliance on label-switched paths established by control protocols, the network architecture is simplified and has greater scalability and flexibility.

26.     In another example, the claimed inventions of the Patents-in-Suit extend IPv6 and allow SR over the IPv6 data plane.  The claimed inventions enable use of multiple segment identifiers embodied as IPv6 addresses in headers and a plurality of segment identifiers embodied as a sequence of IPv6 addresses. A segment identifier is indicated by the destination address of the packet and a pointer indicates another segment identifier.  This allows even more precise control over packet forwarding and even greater flexibility and scalability.

27.     With the inventions claimed in the Patents-in-Suit, network operators can specify explicit paths for packets to travel through the network and can also leverage IPv6's larger address space to improve scalability and define and manage greater numbers of explicit paths. This also allows the inclusion of service functions directly into the header providing for servicing chaining and integration of network functions.  There is reduced need for state management in routers and because packets carry their path information, it is more secure because of the difficulty attackers face manipulating or spoofing routing information now carried in the packet.

28.     Using the claimed inventions, network bandwidth is used more effectively and performance is optimized.  The control plane is greatly simplified and the amount of state information maintained by network nodes is reduced significantly.  There is less reliance on

complex configurations and protocols to control the flow of traffic through a network because operators can define explicit paths.  (*See, e.g.,* '938 patent, col. 25:23-29:21; col. 31:14-24; col. 39:1-11; col. 42:8-29.) This facilitates service chaining where network operators define paths that include service nodes such as firewalls and intrusion detection systems, to improve security, and load balancers, to optimize performance.  This results in costs savings by reducing the need for over-provisioning of network resources and improving the overall efficiency of the network infrastructure.  There is lower latency and traffic is protected against link and node failures without requiring burdensome additional signaling requirements in the network while providing optimum backup paths.

### Advantage Over the Prior Art

29.    The patented inventions disclosed in the Patents-in-Suits, provide many advantages over the prior art, and in particular improve the operations of networks using a path-based protocol address.  (*See, e.g.,* '938 patent at col. 1:54-2:39.)  One advantage of the patented invention is that fewer nodes, in particular path nodes, are required to maintain state information for each path in a network. (*See, e.g.,* '938 patent at col. 31:17-24.)

30.    Another advantage of the patented invention is that utilizing path information in the packet header to route a packet through a network reduces or eliminates the need for additional protocols.  (*See, e.g.,* '938, col. 42:14-16.)

31.    Another advantage of the patented invention is that specific network paths may be specified using path information in the packet header, which allows precise traffic control and selective routing for various purposes such as reduced power consumption, decreased processing time or other cost-saving measures.  (*See, e.g.,* '938 patent, col. 23:54-61; col. 51:30-36; col. 52:40-56.)

32.     Yet another advantage of the patented invention is dynamic routing that responds to disruptions in the network by updating the routing path through the network in response.  (*See, e.g.,* '938 patent at col. 35:62-36:18; col. 37:44-38:10; col. 50:40-54.)   An operation command may be included in the header so that as the data packet is routed through a path node it is routed through a particular node capable of performing the operation identified by the command in the header.  (*See, e.g.,* '938 patent at col. 47:53-58; col. 50:48-54.)

33.     Because of these significant advantages that can be achieved through the use of the patented inventions, MRT believes that the Patents-in-Suit present significant commercial value for companies like T-Mobile.  Indeed, SRv6 has been identified as a key enabling technology for 5G.  SRv6 can replace GTP-U and also any underlay transport layers and be used as the only transport layer in 5G, dramatically simplifying network operations while providing greater traffic engineering control and enabling other capabilities such as service chaining and network slicing, a main feature of 5G.[7]  SR is a key enabler for traffic engineering and network slicing technology and makes SRv6 "the protocol of choice for backhaul networks for 5G and beyond."[8]  Network slicing is considered a critical technology.  AT&T, T-Mobile and Verizon recently were awarded part of a $2B+ contract with the Department of Defense that included a requirement for network slicing.[9]  The T-Mobile Networks support network slicing.[10]

---

[7] https://www.segment-routing.net/images/ACG_Segment_Routing_201808.pdf.

[8] *See, e.g.*, https://www.ericsson.com/en/blog/2023/5/bright-future-of-srv6.

[9] *See, e.g.*, https://washingtontechnology.com/contracts/2024/05/navy-chooses-7-27b-spiral-4-wireless-contract/396332/; https://www.govconwire.com/2024/05/navy-selects-7-vendors-for-2-7b-follow-on-wireless-mobility-services-contract/;
https://sam.gov/api/prod/opps/v3/opportunities/resources/files/f976d6d888c843e2836fcad0e4b75483/download?&status=archived&token= (referring to network slicing at pg. 14).

[10] *See, e.g.*, https://www.techexperience.com/5g-hub; https://www.t-mobile.com/news/network/how-5g-and-network-slicing-elevated-the-game-during-pga-of-americas-biggest-weekend; https://www.fierce-network.com/5g/t-mobile-bigs-network-slicing-prospects-2024.

**Technological Innovation**

34.     The patented inventions disclosed in the Patents-in-Suit resolves technical problems related to traffic engineering in networks, particularly the complexity and scalability problems presented by the incredible growth in networking and the Internet.  As the Patents-in-Suit patent explain, one of the limitations of the prior art as regards network routing was that the approach traditionally used for addressing and routing, and the effect on network latency.  (*See, e.g.,* '938 patent, col. 1:54-2:39.)

35.     The claims of the Patents-in-Suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the Patents-in-Suit recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to efficiently and effectively manage network traffic with optimum utilization of network resources.  (*See, e.g.*, '938 patent, col. 51:17-36.)

36.     In addition, the claims of the Patents-in-Suit recite inventive concepts that improve the functioning of network hardware such as routers for transferring data packets through a network, particularly by reducing the demand on transit nodes and egress nodes to maintain state information and reducing the number of protocols required.  (*See, e.g.*, '938 patent, col. 42:8-16.)

37.     Moreover, the claims of the Patents-in-Suit recite inventive concepts that are not merely routine or conventional use of transferring information.  Instead, the patented invention disclosed in the Patents-in-Suit provides a new and novel solution to specific problems related to improving network performance and packet routing through networks that is scalable and dynamic.

38.     And finally, the patented invention disclosed in the Patents-in-Suit do not preempt all the ways that packet routing may be used to improve network trafficking, nor do the Patents-in-Suit patent preempt any other well-known or prior art technology.

39.     Accordingly, the claims in the Patents-in-Suit recite a combination of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than a patent-ineligible abstract idea.

**Internet Engineering Task Force (IETF) and Standard Setting Organizations**

40.     The IETF is a standards setting organization.   It publishes technical documents referred to as RFCs that define technical foundations and specify application protocols.[11]  Each RFC is a product of the IETF and represents the consensus of the IETF community.

41.     The IETF has a working group, SPRING, which has published a number of RFCs related to SR, including RFC 8402, RFC 8660, RFC 8663, RFC 8754, RFC 8986, RFC 9256 and RFC 9352 (collectively "SR RFCs").

42.     RFC 8402 is entitled "Segment Routing Architecture" and specifies an architectural framework and requirements for implementing SR, including both SR-MPLS and SRv6.[12]

43.     RFC 8660 is entitled "Segment Routing with the MPLS Data Plane" and "specifies the forwarding behavior to allow instantiating SR over the MPLS data plane (SR-MPLS)."[13]

---

[11] https://www.ietf.org/process/rfcs/.
[12] https://datatracker.ietf.org/doc/rfc8402/.
[13] https://datatracker.ietf.org/doc/html/rfc8660.

44.     RFC 8663 is entitled "MPLS Segment Routing over IP" and "describes how SR-MPLS-capable routers and IP-only routers can seamlessly coexist and interoperate through the use of SR-MPLS label stacks and IP encapsulation/tunneling such as MPLS-over-UDP . . . ."[14]

45.     RFC 8754 is entitled "IPv6 Segment Routing Header (SRH)" and "describes the SRH and how it is used by nodes that are Segment Routing (SR) capable."[15]

46.     RFC 8986 is entitled "Segment Routing over IPv6 (SRv6) Network Programming" and "defines the SRv6 Network Programming concept and specifies the base set of SRv6 behaviors that enables the creation of interoperable overlays with underlay optimization."[16]

47.     RFC 9256 is entitled "Segment Routing Policy Architecture" and "updates RFC 8402 as it details the concepts of SR Policy and steering into an SR Policy."[17] "SR Policy is an ordered list of segments (i.e., instructions) that represent a source-routed policy."[18]

48.     RFC 9352 is entitled "IS-IS Extensions to Support Segment Routing over the IPv6 Data Plane" and "describes the IS-IS extensions required to support SR over the IPv6 data plane."[19]

49.     Numerous companies supply interoperable equipment and software solutions that support SR-capable networks and the requirements set forth in the SR RFCs.[20]  Numerous

---

[14] https://datatracker.ietf.org/doc/html/rfc8663.
[15] https://datatracker.ietf.org/doc/html/rfc8754
[16] https://datatracker.ietf.org/doc/html/rfc8986
[17] https://datatracker.ietf.org/doc/html/rfc9256
[18] https://datatracker.ietf.org/doc/html/rfc9256
[19] https://datatracker.ietf.org/doc/html/rfc9352
[20] *See, e.g.*, https://documentation.nokia.com/html/0_add-h-f/93-0073-HTML/7750_SR_OS_Router_Configuration_Guide/appen_standards.pdf; https://eantc.de/wp-content/uploads/2023/04/EANTC-InteropTest2023-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/12/EANTC-MPLSSDNInterop2024-TestReport-v1.3.pdf.

companies also contributed to the SR RFCs, including T-Mobile's parent company, Deutsche Telekom AG.[21, 22, 23, 24, 25, 26]

50.     In the context of 5G and wireless networks, multiple standard setting organizations and industry-based open source communities are involved in creating standards and ensuring interoperability which is critical given the diversity of components and services that are interconnected.  One example is the 3rd Generation Partnership Project ("3GPP").  It is a standard setting organization that develops protocols for mobile telecommunications, including the 5G standard and non-radio access to core networks and other interworking with non-3GPP networks.[27]

51.     The O-RAN ALLIANCE is another example. It is an open technical organization founded in 2018 and T-Mobile is a member.[28]  Its "mission is to encourage the industry towards more intelligent, open, virtualized and fully inter-operable mobile networks."[29]  It publishes specifications and supports integration and testing while working with other standard setting organizations to ensure compatibility.[30]

---

[21] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8986.html#name-contributors (Nokia).

[22] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc9256.html#name-contributors (T-Mobile's parent, Deutsche Telekom AG and Verizon).

[23] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8660.html#name-contributors (Nokia).

[24] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8663.html#name-contributors (Nokia, Verizon).

[25] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc9352.html#name-contributors (Ericsson).

[26] *See, e.g.*, https://datatracker.ietf.org/doc/html/rfc8402 (Nokia, T-Mobile's parent, Deutsche Telekom AG).

[27] *See, e.g.*, https://www.3gpp.org/about-us/introducing-3gpp; https://www.3gpp.org/ftp/Information/presentations/Newcomers_quick-start/Newcomers_slides.pdf.

[28] *See, e.g.*, https://www.o-ran.org/membership.

[29] *See, e.g.*, https://assets-global.website-files.com/60b4ffd4ca081979751b5ed2/64bee579b5449cafb9f0f889_Governance%20of%20O-RAN%20ALLIANCE%20e.V.%20in%20Compliance%20with%20WTO%20Principles-v02.pdf.

[30] *Id.*

52.     The European Telecommunications Standards Institute ("ETSI") is another standard setting organization that develops global standards that ensure interoperability between wireless networks, network operators and devices.  ETSI is part of 3GPP.[31]  ETSI publishes O-RAN specifications[32] and also publishes documents created by Industry Specification Groups (ISGs), such as Group Specifications, which provide technical requirements and explanatory material and are produced and approved by specific ISGs.[33]  T-Mobile is a member of ETSI and various ISGs.[34]

53.     T-Mobile has stated the following about ETSI:

T-Mobile admits that the European Telecommunications Standards Institute (ETSI) is an independent, non-profit standard development organization (SDO) that promulgates globally-accepted standards for the telecommunications industry. T-Mobile admits that ETSI is one of several organizational partners of the Third Generation Partnership Project (3GPP), and that 3GPP created the technical specifications for 3G, 4G, and 5G. Verizon admits that ETSI and its members have developed global standards and that an objective of ETSI is to "produce and perform the maintenance of the technical standards . . . which are necessary to achieve a large unified European market for telecommunications, ICT, other electronic communications networks and services and related areas.[35]

The European Telecommunications Standards Institute (ETSI) is a standard development organization (SDO) that promulgates globally-accepted standards for the telecommunications industry. ETSI has more than 900 members from more than 60 countries. In 1998, ETSI and other SDOs founded and became organizational partners of the Third Generation Partnership Project (3GPP). 3GPP created the technical specifications for 3G, 4G, and 5G.[36]

---

[31] *See, e.g.*, https://www.3gpp.org/ftp/Information/presentations/Newcomers_quick-start/Newcomers_slides.pdf.
[32] *Id.*
[33] *See, e.g.*, https://www.etsi.org/standards/types-of-standards.
[34] https://www.etsi.org/membership.
[35] *Asus Technology Licensing Inc. v. T-Mobile USA, Inc.*, No. 2:23-cv-00486, Dkt. 15 at 5 (¶23) (E.D. Tex. Dec. 26, 2023).
[36] *Id.* at 16 (¶7 counterclaims).

54.     In May 2024, 3GPP and ETSI published a technical specification entitled "5G; Management and orchestration; 5G Network Resource Model (NRM); Stage 2 and Stage 3" as 3GPP TS 28.541 version 18.7.0 Release 18 and ETSI TS 128 541 V18.7.0 (2024-05).[37]  That requirements document specifies that the allowed tunnelling mechanism attribute for a network slice includes SRv6.[38]

55.     One ETSI ISG is the Fifth Generation Fixed Network ISG, which focuses on the "evolution of the fixed network needed to match and further enhance the benefits that 5G has brought to mobile networks and communications" and addresses, among other things, "end-to-end full stack slicing."[39]

56.     The Fifth Generation Fixed Network (F5G) ISG produced and approved a Group Specification that "specifies the End-to-End network architecture, features and related network devices/elements' requirements for F5G, including on-premises, Access, IP and Transport Networks."[40]  It lists IETF RFC 8402 and IETF RFC 8986 as normative references.[41]  ETSI Normative references are necessary for the application of the standard in which they are mentioned.[42]

---

[37] *See, e.g.*, https://www.etsi.org/deliver/etsi_ts/128500_128599/128541/18.07.00_60/ts_128541v180700p.pdf.

[38] *Id.* at pg. 396.

[39] *See, e.g.*, https://www.etsi.org/committee/1696-f5g

[40] *See, e.g.*, ETSI GS F5G 014 V1.1.1 (2023-05) *available at* https://www.etsi.org/deliver/etsi_gs/F5G/001_099/014/01.01.01_60/gs_F5G014v010101p.pdf at sec. 1.

[41] *Id.* at sec. 2.1 ([5] and [6]).

[42] *See, e.g.*, https://portal.etsi.org/Services/editHelp/Search/FAQs/Normative-informative-references.

57.     The F5G Group Specification states that "Segment Routing is the preferred technology for implementing slicing in the aggregation network."[43]  It specifies that "SRv6 shall be used as the bearer connection on the IP/Ethernet fabric Underlay Plane,"[44] "[t]he OLT shall support slicing per VLAN, SRv6 and OTN on the uplink port(s),"[45] "[t]he IP Network shall support SRv6 Best Effort (BE)" and "should support SRv6 Traffic Engineering (TE)."[46]

58.     A different ETSI ISG, the Network Functions Virtualization (NFV) ISG, produced and approved a Group Specification specifying performance metrics and methods for benchmarking networks in NFV infrastructure.[47]  It states that "[p]rotocols like VLAN, VXLAN, GRE, VXLAN-GPE, SRv6 and SFC NSH are needed in NFVI deployments."[48]  AT&T, Verizon, T-Mobile and Samsung are members of the NFV ISG.[49]  The Group Specification was "produced and approved by the Fifth Generation Fixed Network (F5G) ETSI Industry Specification Group (ISG) and represents the views of those members who participated in this ISG."[50]

---

[43] *See, e.g.*, ETSI GS F5G 014 V1.1.1 (2023-05) *available at* https://www.etsi.org/deliver/etsi_gs/F5G/001_099/014/01.01.01_60/gs_F5G014v010101p.pdf at sec. 5.4.1.11.
[44] *Id.* at 5.4.3.1.2.
[45] *Id.* at [R-54]
[46] *Id.* at [R-89] and [R-90].
[47] *See, e.g.*, ETSI GS NFV-TST 009 V3.4.1 (2020-12) *available at* https://www.etsi.org/deliver/etsi_gs/NFV-TST/001_099/009/03.04.01_60/gs_NFV-TST009v030401p.pdf.
[48] *Id.*
[49] *See, e.g.*, https://portal.etsi.org/TB-SiteMap/NFV/NFV-List-members
[50] *See, e.g.*, ETSI GS NFV-TST 009 V3.4.1 (2020-12) *available at* https://www.etsi.org/deliver/etsi_gs/NFV-TST/001_099/009/03.04.01_60/gs_NFV-TST009v030401p.pdf.

59.     In October 2023, the NFV ISG also published a Group Report that analyzed SRv6 and SR-MPLS and discussed RFC 8402, RFC 8754, RFC 8986 and RFC 9256.[51]

60.     Verizon, T-Mobile and AT&T were also part of the Open Networking Foundation ("ONF").[52] The ONF SDN fabric specification, which is part of ONOS, requires the use of SR-MPLS.[53] On information and belief, ONOS also supports SR.[54]  On information and belief, companies such as T-Mobile have implemented SR solutions according to the ONF specifications.[55]

### T-Mobile's Networks and Accused Instrumentalities

61.     T-Mobile operates one or more networks including wireless, fixed wireless and fiber networks ("T-Mobile Networks").  Its networks are operated under various brand names including "T-Mobile," "T-Mobile Fiber"[56] and "Metro."  The T-Mobile Networks include 5G stand-alone networks.  T-Mobile Networks also supports multiple MVNOs, including Mint Mobile and Ultra Mobile.[57]

62.     T-Mobile relies on multiple vendors including Ericsson and Nokia among others for network infrastructure components for the T-Mobile Networks that support SR and the SR

---

[51] *See, e.g.*, ETSI GR NFV-IFA 035 V5.1.1 (2023-10) *available at* https://www.etsi.org/deliver/etsi_gr/NFV-IFA/001_099/035/05.01.01_60/gr_NFV-IFA035v050101p.pdf.
[52] *See, e.g.*, https://opennetworking.org/member-listing/ (AT&T and T-Mobile); https://www.datacenterknowledge.com/open-source-software/verizon-latest-telco-to-join-onos-open-source-sdn-project.
[53] *See, e.g.*, https://docs.sd-fabric.org/master/specification.html.
[54] https://wiki.onosproject.org/display/ONOS/Master-Segment+Routing; https://wiki.onosproject.org/pages/viewpage.action?pageId=39813572.
[55] *See, e.g.*, https://www.geeksforgeeks.org/open-networking-operating-system-onos-in-software-defined-networks/; https://www.epsglobal.com/about-eps-global/blog/march-2019/open-networking-life-on-the-edge.
[56] *See, e.g.*, https://t-mobilefiber.com/.
[57] *See, e.g.*, https://www.t-mobile.com/news/business/t-mobile-to-acquire-mint-and-ultra-mobile.

RFCs.[58]  On information and belief, the T-Mobile Networks support the functionality specified in the SR RFCs ("Accused Instrumentalities").

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,212,076

63.    The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

64.    On February 19, 2019, U.S. Patent No. 10,212,076 ("the '076 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS FOR MAPPING A NODE-SCOPE SPECIFIC IDENTIFIER" was duly and legally issued by the United States Patent and Trademark Office.

65.    Plaintiff is the assignee and owner of the right, title and interest in and to the '076 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

66.    The '076 patent is valid and enforceable.  A true and correct copy of the '076 patent is attached as Exhibit A.

67.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '076 patent by making, using, selling, importing and/or providing and

---

[58] *See, e.g.*, https://wholesale.t-mobile.com/news/t-mobile-advances-standalone-5g-capabilities-with-commercial-launch-of-voice-over-5g (Nokia); https://www.fierce-network.com/5g/t-mobile-values-partnerships-both-nokia-ericsson (Nokia and Ericsson); https://www.nokia.com/about-us/news/releases/2024/01/23/t-mobile-selects-nokia-to-improve-scalability-and-efficiency-for-5g-high-speed-internet-service/; https://documentation.nokia.com/sr/24-3/7750-sr/books/common/dita_standards_2.html (standards for Nokia Service Router Operating System (SR OS), including RFC 8660, RFC 8663, RFC 8754, RFC 8986, RFC 9256 (which updates RFC 8402) and RFC 9352 among others); https://www.ericsson.com/en/portfolio/networks/ericsson-radio-system/mobile-transport/router; https://www.ericsson.com/4a503e/assets/global/eridoc/405880/3-28701-FGB1010874UEN.pdf (at pg. 3 - both SR-MPLS and SRv6 for network slicing).

causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

68.     Exemplary infringement analysis showing infringement of claim 1 of the '076 patent is set forth in Exhibit I.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '076 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '076 patent.

69.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '076 patent during the pendency of the '076 patent.

70.     MRT has been harmed by T-Mobile's infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,374,938**

71.     The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

72.     On August 6, 2019, U.S. Patent No. 10,374,938 ("the '938 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

73.     Plaintiff is the assignee and owner of the right, title and interest in and to the '938 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

74.     The '938 patent is valid and enforceable.  A true and correct copy of the '938 patent is attached as Exhibit B.

75.     Upon information and belief, Defendant has and continues to directly infringe at least claim 15 of the '938 patent by making, using, selling, importing and/or providing and

causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

76.     Exemplary infringement analysis showing infringement of claim 15 of the '938 patent is set forth in Exhibit J.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '938 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '938 patent.

77.     The Accused Instrumentalities infringed and continue to infringe claim 15 of the '938 patent during the pendency of the '938 patent.

78.     MRT has been harmed by T-Mobile's infringing activities.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,397,100**

79.     The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

80.     On August 27, 2019, U.S. Patent No. 10,397,100 ("the '100 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS USING A REGION SCOPED OUTSIDE-SCOPE IDENTIFIER" was duly and legally issued by the United States Patent and Trademark Office.

81.     Plaintiff is the assignee and owner of the right, title and interest in and to the '100 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

82.     The '624 patent is valid and enforceable.  A true and correct copy of the '100 patent is attached as Exhibit C.

83.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '100 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

84.     Exemplary infringement analysis showing infringement of claim 1 of the '100 patent is set forth in Exhibit K.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '100 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '100 patent.

85.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '100 patent during the pendency of the '100 patent.

86.     MRT has been harmed by T-Mobile's infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,404,583**

87.     The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

88.     On September 3, 2019, U.S. Patent No. 10,404,583 ("the '583 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS USING MULTIPLE OUTSIDE-SCOPE IDENTIFIERS" was duly and legally issued by the United States Patent and Trademark Office.

89.     Plaintiff is the assignee and owner of the right, title and interest in and to the '583 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

90.     The '583 patent is valid and enforceable.  A true and correct copy of the '583 patent is attached as Exhibit D.

91.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '583 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

92.     Exemplary infringement analysis showing infringement of claim 1 of the '583 patent is set forth in Exhibit L.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '583 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '583 patent.

93.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '583 patent during the pendency of the '583 patent.

94.     MRT has been harmed by T-Mobile's infringing activities.

**COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,587,505**

95.     The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

96.     On March 10, 2020, U.S. Patent No. 10,587,505 ("the '505 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

97.     Plaintiff is the assignee and owner of the right, title and interest in and to the '505 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

98.     The '505 patent is valid and enforceable.  A true and correct copy of the '505 patent is attached as Exhibit E.

99.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '505 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

100.     Exemplary infringement analysis showing infringement of claim 1 of the '505 patent is set forth in Exhibit M.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '505 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '505 patent.

101.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '505 patent during the pendency of the '505 patent.

102.     MRT has been harmed by T-Mobile's infringing activities.

### COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 10,785,143

103.     The allegations set forth in the foregoing paragraphs are incorporated into this Sixth Claim for Relief.

104.     On September 22, 2020, U.S. Patent No. 10,785,143 ("the '143 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

105.     Plaintiff is the assignee and owner of the right, title and interest in and to the '143 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

106.     The '143 patent is valid and enforceable.  A true and correct copy of the '143 patent is attached as Exhibit F.

107.     Upon information and belief, Defendant has and continues to directly infringe at least claim 6 of the '143 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

108.     Exemplary infringement analysis showing infringement of claim 6 of the '143 patent is set forth in Exhibit N.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '143 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '143 patent.

109.     The Accused Instrumentalities infringed and continue to infringe claim 6 of the '143 patent during the pendency of the '143 patent.

110.     MRT has been harmed by T-Mobile's infringing activities.

**COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 10,708,168**

111.     The allegations set forth in the foregoing paragraphs are incorporated into this Seventh Claim for Relief.

112.     On July 7, 2020, U.S. Patent No. 10,708,168 ("the '168 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

113.     Plaintiff is the assignee and owner of the right, title and interest in and to the '168 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

114.     The '168 patent is valid and enforceable.  A true and correct copy of the '168 patent is attached as Exhibit G.

115.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '168 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

116.     Exemplary infringement analysis showing infringement of claim 1 of the '168 patent is set forth in Exhibit O.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '168 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '168 patent.

117.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '168 patent during the pendency of the '168 patent.

118.     MRT has been harmed by T-Mobile's infringing activities.

## COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 11,012,344

119.     The allegations set forth in the foregoing paragraphs are incorporated into this Eighth Claim for Relief.

120.     On May 18, 2021, U.S. Patent No. 11,012,344 ("the '344 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

121.     Plaintiff is the assignee and owner of the right, title and interest in and to the '344 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

122.    The '344 patent is valid and enforceable.  A true and correct copy of the '344 patent is attached as Exhibit H.

123.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '344 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

124.    Exemplary infringement analysis showing infringement of claim 1 of the '344 patent is set forth in Exhibit P.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '344 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '344 patent.

125.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '344 patent during the pendency of the '344 patent.

126.    MRT has been harmed by T-Mobile's infringing activities.

**COUNT IX – INFRINGEMENT OF U.S. PATENT NO. 10,904,144**

127.    The allegations set forth in the foregoing paragraphs are incorporated into this Ninth Claim for Relief.

128.    On January 1, , 2021, U.S. Patent No. 10,904,144 ("the '144 patent"), entitled "METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS FOR ASSOCIATING A NAME WITH A NETWORK PATH" was duly and legally issued by the United States Patent and Trademark Office.

129.    Plaintiff is the assignee and owner of the right, title and interest in and to the '144 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

130.    The '144 patent is valid and enforceable.  A true and correct copy of the '144 patent is attached as Exhibit I.

131.    Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '144 patent by making, using, selling, importing and/or providing and causing to be used a Segment Routing Standard-Compliant Appliances (the "Accused Instrumentalities").

132.    Exemplary infringement analysis showing infringement of claim 1 of the '144 patent is set forth in Exhibit Q.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by T-Mobile with respect to the '144 patent. MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '144 patent.

133.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '144 patent during the pendency of the '144 patent.

134.    MRT has been harmed by T-Mobile's infringing activities

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MRT demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MRT demands judgment for itself and against T-Mobile as follows:

A.      An adjudication that the T-Mobile has infringed the Patents-in-Suit;

B.      An award of damages to be paid by T-Mobile adequate to compensate MRT for T-Mobile's past infringement of the Patents-in-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of MRT's reasonable attorneys' fees; and

D.      An award to MRT of such further relief at law or in equity as the Court deems just and proper.

Dated: July 8, 2024                                    DEVLIN LAW FIRM LLC

                                                       /s/ Timothy Devlin
                                                       Timothy Devlin
                                                       Derek Dahlgren
                                                       1526 Gilpin Avenue
                                                       Wilmington, Delaware 19806
                                                       Telephone: (302) 449-9010
                                                       Facsimile: (302) 353-4251
                                                       tdevlin@devlinlawfirm.com
                                                       ddahlgren@devlinlawfirm.com

                                                       G. Andrew Gordon, (pro hac vice to be filed)
                                                       Andrew Gordon Law Firm PLLC
                                                       6518 Ryeworth Dr.
                                                       Frisco, TX 75035
                                                       Phone: (408) 390-4473
                                                       andrew@agordonlawfirm.com

                                                       *Attorneys for Plaintiff Morris Routing Technologies, LLC*